The order below is hereby signed.

Signed: August 31 2022



Elizabeth L. Gunn
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF COLUMBIA

| In re: | Case No. 19-00003-ELG |
|---|---|
| Mark Fam,<br>    Debtor. | Chapter 13 |

## MEMORANDUM OPINION AND ORDER

This matter was brought before the Court on the dismissed former Debtor's *Motion to Compel Standing Trustee to Turn Over Funds on Hand as of Dismissal of Case* (ECF No. 102) (the "Turnover Motion"), seeking the Court to cause the chapter 13 trustee (the "Trustee") to turn over $18,340.80, the amount held by the Trustee as of the dismissal of this case and subsequently disbursed to creditors after dismissal pursuant to the terms of the *Order Confirming Second Amended Plan Filed May 14, 2019* (ECF No. 57) (the "Confirmation Order"). The main issue in this case is whether language in the Supreme Court's decision in *Harris v. Viegelahn,* 575 U.S. 510 (2015) calls into question this Court's previous opinion in *In re Parrish*, 275 B.R. 424 (Bankr. D.D.C. 2002). *Parrish* held, *inter alia*, that upon dismissal of a chapter 13 case, the Bankruptcy Code[1] required the chapter 13 trustee to disburse post-petition, post-plan confirmation payments then held by the trustee to creditors, not to the debtor. For the reasons set forth herein, the Court

---

[1] Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"). All section references herein shall be to the Bankruptcy Code unless otherwise noted.

finds that, unless ordered otherwise, upon dismissal of a chapter 13 case in which a plan has been confirmed, the Bankruptcy Code requires a chapter 13 trustee to return any post-petition wages held to the debtor. However, on the facts of *this* case, because there is a final order directing otherwise, the Debtor's Turnover Motion must be denied.

## I.    Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

## II.    Background

The relevant facts in this case are not in dispute. On January 3, 2019 (the "Petition Date")[2], the Debtor filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code. On May 14, 2019, the Debtor filed his Second Amended Chapter 13 Plan (ECF No. 53) (the "Plan"). The Plan provided for a 100% plus 6% interest distribution to all creditors with monthly payments of $1,000 for four months, then $1,200 per month for an additional twenty months, plus the sale of real property located on Aspen Street in Alexandria, Virginia (the "Property") in an amount to pay off the mortgage on the Property in full and any remaining balance due under the Plan. Plan, §§ 3, 4.D, 10, ECF No. 53. Specifically, Section 10 of the Plan provided:

> Debtor shall sell his real property at 219 Aspen St., Alexandria VA within two years of filing and pay off the mortgage in full (including all arrears), as well as the remaining balance due under the plan so as to pay all allowed claims in full. Pending such sale, Debtor shall make adequate protection payments to the holder/servicer

---

[2] This case was originally assigned to the Hon. S. Martin Teel, Jr. and was reassigned to in September 2020 to Judge Gunn following her appointment.

> of that claim (Ditech) in the amount of the regular monthly mortgage payment (at present approximately $2275.55), and, after payment of administrative expenses and all other allowed claims in full, Trustee shall pay $1080 per month, plus any additional funds on hand, in additional adequate protection payments to Ditech.

(the "Plan Sale Language"). Plan, § 10, ECF No. 53. Upon recommendation of the Trustee,[3] the Confirmation Order was entered on July 5, 2019. The Plan Sale Language also appears in the Confirmation Order as an "ORDERED" paragraph. Confirmation Order, p. 2, ECF No. 57. The Conformation Order also provides, in relevant part,

> ORDERED, that notwithstanding 11 USC § 1327(b), confirmation of the plan shall not vest the property of the estate in the debtor(s) until the plan has been completed and the court has entered a discharge order (or if no discharge was obtained, until the court has entered an order closing the case or an order discharging the Trustee), and it is further,

(the "Vesting Language"), and

> ORDERED, that funds received and deposited prior to midnight of the date of entry of a dismissal order shall be distributed in accordance with the terms of the confirmed plan, . . .

(the "Dismissal Language"). Confirmation Order, p. 2, ECF No. 57. Under the terms of the Plan and Confirmation Order, the Debtor was required to sell his Property on or before January 19, 2021.

In October 2020, NewRez LLC d/b/a/ Shellpoint Mortgage Servicing ("NewRez")[4] filed a motion for relief from the automatic stay as to the Property, alleging a post-petition default of twenty payments on the Property in the total amount of $44,722.62 plus fees and costs (the "Motion for Relief"). NewRez Mot. Relief, ECF No. 71. The Debtor objected to the Motion for Relief and an *Agreed Order Modifying Stay as it Applies to Real Property* was entered on December 8, 2020

---

[3] The original chapter 13 trustee in this case was Nancy Spencer Grigsby. Ms. Grigsby was replaced by chapter 13 trustee Rebecca A. Herr upon Ms. Grigsby's retirement in October 2019.

[4] While the Plan listed Ditech, the note was held by NewRez and was being serviced by Ditech.

(the "Consent Order"). Debtor's Obj. to NewRez Mot. Relief, ECF No. 75; Agreed Order Modifying Stay, ECF No. 78. Under the terms of the Consent Order, NewRez was given relief from stay as to the Property but agreed to forbear from exercising any right to foreclose upon the terms and conditions contained therein including resumption of regular monthly payments of over $2,100 in December 2020 plus additional monthly cure payments of almost $8,000 each from December 2020 through May 2021. Agreed Order Modifying Stay, ECF No. 78.

On May 5, 2021, the Trustee filed a motion to dismiss the Debtor's case for failure to comply with the Plan and Confirmation Order because the Property was not sold on or before January 19, 2021 and therefore there was an unreasonable delay prejudicial to creditors under § 1307(c)(1) (the "Motion to Dismiss").[5] Trustee's Mot. Dismiss, ECF No. 80. One week later, on May 12, 2021, the Debtor filed his *Motion to Modify Plan* (the "Motion to Modify") along with a proposed Modified Plan. Debtor's Mot. Modify Plan, ECF No. 82. In the Motion to Modify, the Debtor alleged that the Trustee had misapplied the Debtor's plan payments to date, specifically distributing all funds after payment of the Trustee's statutory fee to Ditech/NewRez and not to unsecured creditors as called for in § 10 of the Plan. *Id.* at ¶ 2. The Debtor alleged that the misapplied funds were an amount sufficient to pay all unsecured creditors in full in the Debtor's case. *Id.*

The Motion to Modify then went on to disclose that the Debtor had not sold the Property as called for by the Plan and Confirmation Order, instead moving back into the Property after the loss of income due to COVID-19. *Id.* at ¶ 3. Therefore, the Debtor sought to modify the Plan, providing for funding of $18,900 for the first twenty-six months, $100 a month for the next twenty-

---

[5] The chapter 13 trustee had previously filed a motion to dismiss the case in December 2019 for a payment default, but that motion was withdrawn in February 2020.

four months, proposing another two years (i.e., four years after the Petition Date) for the Debtor to sell the Property, and to continue to make regular monthly payments to Ditech/NewRez until the Property was sold. *Id*. at ¶ 5. On May 26, 2021, the Debtor filed a response to the Motion to Dismiss, arguing that the proposed Modified Plan, if confirmed, would remedy the alleged basis for dismissal in the Motion to Dismiss. Debtor's Resp. Trustee's Mot. Dismiss, ECF No. 84.

Unsurprisingly, after waiting over two years for the sale of the Property under the Plan and Confirmation Order, on June 2, 2021, NewRez filed its *Objection to Confirmation of Debtor's Proposed Chapter 13 Plan* (the "Confirmation Objection"). NewRez Obj. Confirmation Debtor's Proposed Plan, ECF No. 85. In the Confirmation Objection, NewRez argued that the Modified Plan was not equitable or feasible, was not supported by an application to employ a realtor, and that the Debtor had not shown any progress towards the sale of the Property since the Petition Date, instead having taken steps contrary to the sale of the Property by moving into the Property during the pendency of the case. *Id*. at ¶¶ 8-12. Further, NewRez argued that it entered into the Consent Order based upon the terms of the Plan and Confirmation Order that the Property was to be sold within a few months of entry thereof and a further delay of two years would be inequitable. *Id*. at ¶ 10.

The hearings on the Debtor's Motion to Modify and the Trustee's Motion to Dismiss were continued numerous times – originally set for June 2021, heard briefly in July 2021, and then continued multiple times until December 2021. At the hearing held December 17, 2021, the Debtor was not present, but counsel for the Debtor represented to the Court that the Debtor had advised him that morning that he had received an offer to purchase the Property. Without more details, the Court continued the hearing to January 14, 2022, on the condition that the Debtor be present to testify as to any proposed sale and that if the Debtor was not present, the case would be dismissed.

*See* Minute Entry, ECF No. 90.

Prior to the continued hearing and consistent with counsel's representations as to the receipt of an offer for the Property, on December 23, 2021, the Debtor filed his *Motion to Approve Sale of Real Property* (the "Sale Motion"). Debtor's Mot. Approve Sale, ECF No. 91. As set forth in the Sale Motion, the proposed sale was for $640,000 to an entity identified as Overseas Development Co. with an address in Denver, Colorado. *Id*. at 2. The offer was obtained without the use of a real estate agent. *Id*. at 3. The Sale Motion attached and incorporated a Virginia Residential Real Estate Purchase Agreement between the Debtor and the proposed purchaser (the "Purchase Agreement"). Additional relevant terms of the proposed sale included in the Purchase Agreement was a good faith deposit not due until December 27, 2021 (four days after the filing of the Sale Motion), a proposed closing date of March 15, 2022, and the document was signed by an individual without indication of the role/ownership in the proposed purchasing entity. *Id*. at 8, 13. The Debtor set a hearing on the Sale Motion on the same date and time as the continued hearing on the motion, January 14, 2022.

In early January 2022 both the Trustee and NewRez filed objections to the Sale Motion raising issues with respect to most of the main terms of the relief requested, including whether the property was properly marketed, whether the deposit was paid in December 2021, whether the proposed price would be sufficient to pay creditors in full, and the delayed closing date. *See* Trustee's Obj. Debtor's Mot. Approve Sale, ECF No. 92; NewRez Obj. Debtor's Mot. Approve Sale, ECF No. 93.

On the morning of the continued hearing on the Motion to Dismiss and the Sale Motion at which the Debtor was ordered to appear or the case would be dismissed, counsel for the Debtor provided the Court with evidence that his client was in the hospital and unable to attend the hearing.

Therefore, despite the Court's December 2021 order that the case would be dismissed if the Debtor was not present, the Court found that exigent circumstances existed and continued the hearings to February 18, 2022. At the continued hearing, once again the Debtor did not appear in Court. Counsel for the Debtor was only able to inform the Court that the Debtor was unable to join the hearing and that counsel had been informed that the proposed buyer had backed out of the proposed sale. Thereafter, counsel for the Debtor withdrew the Sale Motion by oral motion, which the Court granted. Based upon the Court's prior rulings, the Debtor's failure to attend the hearing, and the material plan default in the case, the Court ordered that the Debtor's case would be dismissed on the Trustee's Motion to Dismiss. The *Order Dismissing Case* was entered that same date (the "Dismissal Order"). Order Dismissing Case, ECF No. 100.

After dismissal of the case, on March 5, 2022, the now-dismissed Debtor filed the Turnover Motion seeking turnover to the Debtor of the $18,340.80 held by the Trustee as of the date of the entry of the Dismissal Order, which were subsequently disbursed to unsecured creditors pursuant to the Dismissal Language in the Confirmation Order. Debtor's Turnover Mot., ECF No. 102. The Turnover Motion argued that in light of the Supreme Court decision of *Harris v. Viegelahn,* the reasoning in this Court's prior opinion in *In re Parrish* as to the Bankruptcy Code's statutory requirement for disposition of funds held by a chapter 13 trustee upon dismissal of a case after confirmation of a plan was no longer valid. *See id*.

On April 1, 2022, the Trustee filed her opposition to the Turnover Motion arguing that the Court's Confirmation Order, not the Bankruptcy Code, controlled the Trustee's distribution of the funds held at dismissal. Trustee's Obj. Debtor's Turnover Mot., ECF No. 105. Therefore, relying upon such language, the Trustee disbursed the remaining funds to general unsecured creditors on February 28, 2022. The Trustee also argued her position was further supported by the *Parrish*

decision. A hearing on the Turnover Motion was held on April 8, 2022 at which counsel for the former Debtor and the Trustee offered argument. At the hearing the Court raised questions as to whether, because the Trustee was relying not on the chapter 13 plan but on the Confirmation Order, the Supreme Court decision *United Student Aid Funds, Inc. vs. Espinosa*, 559 U.S. 260 (2010) would impact or inform the decision in this matter. At the conclusion of the hearing, the Court took the matter under advisement and provided the parties with the opportunity to submit further post-hearing memorandum of law on the legal questions raised at the hearing. The Trustee and the Debtor timely filed supplemental memorandum of law, after which the Court took the issue under advisement. *See* Trustee's Suppl. Br., ECF No. 110; Debtor's Suppl. Br., ECF No. 111.

### III. Discussion

The case poses two questions. The first is a question of law – whether based upon the reasoning and dicta in *Harris v. Viegielahn* this Court should reconsider its holding in *Parrish* as to what the Bankruptcy Code requires a chapter 13 trustee to do with any funds held in a case dismissed after confirmation of a plan. The second is a question of law and fact in this case – whether, based upon the facts and the law, the Debtor was entitled to the funds held by the Trustee as of the dismissal of this case. As more fully set forth herein, the Court finds that the answers are "yes" and "no," respectively. The Court will address each of these issues in turn.

    A. *Funds on Hand at Dismissal Post-Confirmation, Absent Cause Otherwise, Should be Paid to the Debtor*

The legal question in this case, as was the case in *Parrish*, is who is entitled to receive funds held by a chapter 13 trustee after dismissal of a case in which a chapter 13 plan has been confirmed. Unlike other factual scenarios – such as payment to creditors upon confirmation or return to the debtor upon denial of confirmation – the Bankruptcy Code contains no clear directive

as to what a chapter 13 trustee shall do with funds received post-confirmation and held at the time of dismissal. *See* 11 U.S.C. § 1326(a)(2). There is a split of authority on the issue. The majority, in analyzing the disposition of funds in a case with a post-confirmation dismissal, find that the court must examine the interplay between § 1326(a)(2) and § 349 (Effect of Dismissal). The majority finds that the language of § 349(b)(3), which restores all property rights in the case to their position at the beginning of the case, means that post-petition property and wages held by a chapter 13 trustee revest in the debtor upon dismissal and, therefore, must be returned the debtor. *See, e.g., In re Edwards*, 538 B.R. 536, 541 (Bankr. S.D. Ill. 2015). In contrast, courts in the minority, including this Court in *Parrish*, rely solely on the language of § 1326(a)(2), which requires a chapter 13 trustee to disburse payments "in accordance with the plan as soon as practicable" after plan confirmation.[6] 11 U.S.C. § 1326(a)(2). Thus, the minority holds that the as "soon as practicable" disbursements to be made by the chapter 13 trustee, even if from payments made to the trustee pre-dismissal, must nevertheless be paid to creditors post-dismissal (i.e., at the soonest "practical" moment). *See, e.g., In re Parrish*, 275 B.R. 424, 426 (Bankr. D.D.C. 2002).

The Supreme Court addressed a similar, albeit slightly different issue in *Harris*. *Harris v. Viegelahn*, 575 U.S. 510, 513 (2015). There, the Supreme Court addressed whether a chapter 13 trustee must distribute post-petition payments held at the time of conversion to chapter 7 to creditors pursuant to the confirmed chapter 13 plan or return such wages to the debtor.[7] *See id.*

---

[6] Section 1326(a)(2) was amended by the Reform Act of 1994 to add the phrase "as soon as practicable" to clarify Congressional intent as to the timing of trustee payments. *See* H.R. Rep. No. 103-835, at 56 (1994).

[7] The Bankruptcy Reform Act of 1994 added § 348(f)(1) to the Bankruptcy Code. All courts to have considered the issue agree that in the typical case, a debtor's post-petition wages, including undisbursed funds on hand at the time of conversion from chapter 13 to chapter 7, do not become part of the chapter 7 estate. *See Harris*, 575 U.S. at 517. The only exception is a bad faith conversion, in which case the funds held by a chapter 13 trustee do become property of the estate under § 348(f)(2).

Although considering conversion and not dismissal, the Supreme Court's analysis considered the exact same language in § 1326(a)(2), but the Court Supreme did not limit its consideration just to that section, and considered the question presented with reference to § 348 (Effect of Conversion). *See id*. at 518-20. The Supreme Court concluded that allowing a terminated chapter 13 trustee to distribute post-petition payments to creditors after conversion would be "incompatible with that statutory design" (i.e., § 348(f)(1)(A)'s removal of post-petition earnings from the converted chapter 7 estate). *Id*. at 518. The Supreme Court used the term "terminated Chapter 13 trustee" because it found that § 348(e) acts to "terminate[] the service of the Chapter 13 trustee" immediately upon conversion of the case to chapter 7. *Id.* at 519. Thus, the Supreme Court found that the terminated chapter 13 trustee would not have statutory authority to distribute such post-petition payments to creditors, and that returning the undistributed funds to the debtor was not an unauthorized chapter 13 service. *Id*.

It is not the holding of *Harris* that impacts this case, but the dicta in which the Supreme Court rejected the argument that the language of § 1326(a)(2), which instructs a chapter 13 trustee to distribute "payments in accordance with the plan," granted the requisite authority to the chapter 13 trustee to make post-conversion payments to creditors. *See Harris v. Viegelahn*, 575 U.S. 510, 519-20 (2015) (citing 11 U.S.C. § 103(j)[8]: "Chapter 13 of this title applies only in a case under such chapter."). This is in direct contrast with this Court's interpretation of the exact same language in *Parrish*. *Compare id*. at 520 ("When a debtor exercises his statutory right to convert, the case is placed under Chapter 7's governance, and no Chapter 13 provision holds sway. … [The debtor] having converted the case, the Chapter 13 plan was no longer 'bind[ing].' § 1327(a). And . . . the

---

[8] The Small Business Reorganization Act, Pub. L. 116-51 (Feb. 19, 2020) added a new subparagraph (i). The *Harris* opinion cites to 11 U.S.C. § 103(i), the subsection which is now § 103(j).

former Chapter 13 trustee, lacked authority to distribute 'payment[s] in accordance with the plan.'"), *with In re Parrish*, 275 B.R. 424, 426 (Bankr. D.D.C. 2002) ("Section 1326(a)(2) makes no exception with respect to funds held by a trustee at the moment of dismissal: by its terms, those funds must be disbursed in accordance with the terms of the confirmed plan."). In further dicta in *Harris,* the Supreme Court stated that nothing in a chapter 13 plan gives creditors a vested right in funds held by a chapter 13 trustee, nor is there any provision of the Bankruptcy Code that classifies any property as belonging to creditors. *Harris*, 575 U.S. at 520. While not specifically referencing the vesting language in § 349, the discussion of the impact of conversion of a chapter 13 case and the vesting of property reinforces the majority's interpretation of interplay of § 349(b)(3) and § 1326(a)(2) in post-confirmation dismissed cases. Although not binding, the dicta in *Harris* should be given "considerable persuasive value" by this Court. *See United States v. Dorcely*, 454 F.3d 366, 375 (D.C. Cir. 2006) ("[C]arefully considered language of the Supreme Court, even if technically dictum, generally must be treated as authoritative."); *see also Bangor Hydro-Elec. Co. v. FERC*, 78 F.3d 659, 662 (D.C. Cir. 1996) ("It may be dicta, but Supreme Court dicta tends to have somewhat greater force-particularly when expressed so unequivocally.").

This case presents the first opportunity post-*Harris* for this Court to reconsider its opinion and analysis in *Parrish*. The courts that have opined on the issue presented herein post-*Harris* have held that the Bankruptcy Code requires funds on hand with a chapter 13 trustee at the time of a post-confirmation dismissal should be distributed to debtors absent "cause" under § 349(b) for the court to order otherwise. *See In re Elms*, 603 B.R. 11, 15 (Bankr. S.D. Ohio 2019); *In re Bateson*, 551 B.R. 807, 813 (Bankr. E.D. Mich. 2016). This Court agrees, and further finds that the Vesting

Language does not alter this analysis.[9] Post-petition payments and property held by the chapter 13 trustee upon dismissal of a post-confirmation case vest in the debtor under § 349(b)(3) and, absent an order under § 349(b) or otherwise, must be returned to the debtor by the trustee. If creditors have no vested rights in funds held by a chapter 13 trustee in a post-confirmation converted case, creditors in a post-confirmation dismissed case should have no greater rights. *See Harris v. Viegelahn,* 575 U.S. 510, 520 (2015). Section 1326(a)(2) does not provide a chapter 13 trustee with disbursement authority in perpetuity, instead it applies only during the pendency of the chapter 13 case. Stated otherwise, § 1326(a)(2) instructs the chapter 13 trustee that if a plan is confirmed, the trustee shall distribute the payments in accordance with a confirmed plan, but that authority does not exist post-dismissal. *See Bateson*, 551 B.R. at 812. Therefore, absent an order for cause under § 349(b)(3) or an order otherwise, in a case dismissed with a confirmed chapter 13 plan, the chapter 13 trustee must return any funds on hand to the debtor held upon dismissal of the case.

B.  *The Confirmation Order, Not the Bankruptcy Code, Controls in this Case*

The analysis of this case is not limited solely to the requirements of the Bankruptcy Code. As set forth *supra*, the Confirmation Order in this case contained specific language that any funds on hand as of midnight the date of dismissal were to be distributed to creditors in accordance with the terms of the confirmed plan. The Debtor argues that upon dismissal of the case, the Confirmation Order was "no longer in force," and therefore the distribution requirement contained therein was not binding on the Trustee. Debtor's Suppl. Br. at 1-2, ECF No. 111. It was in the context of the efficacy of the Confirmation Order post-dismissal that the Court questioned the

---

[9] The Vesting Language alters only post-confirmation and pre-discharge (or closure without discharge) vesting under § 1327(b), not § 349(b) revesting of property upon dismissal.

Debtor and Trustee on the impact, if any, of the Supreme Court decision in *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010), and afforded the parties an opportunity to submit further briefs on the topic. As stated in *Espinosa*, a bankruptcy court's order confirming a chapter 13 plan is a final judgment. *Espinosa*, 559 U.S. at 269. More particularly, *Espinosa* stands for the proposition that a confirmation order is enforceable and binding even if such order contains terms for which the bankruptcy court lacked statutory authority. *See id.* at 273-74. It is clear that prior to the dismissal of the Debtor's case the Dismissal Language in the Confirmation Order was binding on the Debtor and the Trustee, even though contrary to the finding as to § 1326(a)(2) above. The question is whether such language continued to be binding post-dismissal.

Relying on a statement in the Ninth Circuit case of *Nash v. Kester*, 765 F.2d 1410, 1413 (9th Cir. 1985), the Debtor argues that notwithstanding the validity of the Confirmation Order prior to dismissal, upon dismissal the Confirmation Order was "no longer in force." Debtor's Suppl. Br. at 1-2, ECF No. 111. However, this reliance is misplaced – *Nash* references the effect of dismissal on a confirmed chapter 13 plan, not the effect of dismissal on a confirmation order (a final judgment in the chapter 13 case). *See Nash*, 765 F.2d at 1413. Section 349(b) of the Bankruptcy Code governs the effect of dismissal. It states that dismissal: (1) reinstates any superseded proceeding or custodianship, any avoided transfer, and any voided lien; (2) vacates any order or judgment under §§ 552(i)(1) (dismissal for failure to file required information), 542 (turnover of property), 550 (liability of transferee of avoided transfer), or 553 (setoff); and (3) as discussed *supra*, revests property of the estate in the entity which held it prior to commencement of the case. *See* 11 U.S.C. § 349(b). It is generally accepted that the intent of § 349 is to "restore all property rights to the position in which they were found at the commencement of the case." *In re Murphy*, 493 B.R. 576, 581 (Bankr. D. Co. 2013) (quoting *In re Sanitate*, 415 B.R. 98, 105

(E.D. Pa. 2009) and S. Rep. No. 95-989 at 48-49 (1977)). As to the effect of the chapter 13 plan, the holding in *Nash* is consistent with the effect of § 349(b) at dismissal – in order to restore the parties to their relative positions prior to the commencement of the case, the effect of dismissal is essentially to negate the chapter 13 plan, and the parties are therefore no longer bound by its terms. *See Murphy,* 493 B.R. at 581; *see also* 11 U.S.C. § 1327(a) (the provisions of a confirmed plan, not the confirmation order, bind the debtor and each creditor); 11 U.S.C. § 1327(b) (differentiating between the chapter 13 plan and order confirming chapter 13 plan). However, the confirmation order is separate and distinct from the chapter 13 plan itself.

A chapter 13 confirmation order is not among or similar to the enumerated orders or judgments in § 349(b) that are vacated upon dismissal of a chapter 13 case. Nothing in the Bankruptcy Code vacates the terms of a final confirmation order upon the dismissal of the case. Had Congress wanted dismissal of a chapter 13 case to vacate a confirmation order it could have included § 1325 in § 349(b)(2). *See NLRB v. SW Gen., Inc.*, 580 U.S. 288, ____, 137 S. Ct. 929, 940 (2017) ("The *expressio unius* canon applies only when 'circumstances support[ ] a sensible inference that the term left out must have been meant to be excluded.'") (quoting *Chevron U.S.A. v. Echazabal*, 536 U.S. 73, 81 (2002)). On a practical basis, it is common for bankruptcy courts (including this one) in cases where a chapter 13 plan was confirmed, then the case dismissed, and later the dismissal was vacated, to reinstate the case and continue to perform under the prior chapter 13 plan and confirmation order. *See, e.g., Geberegeorgis v. Gammarino (In re Geberegeorgis)*, 310 B.R. 61, 70 (6th Cir. BAP 2004); *Diviney v. Nationsbank of Tex., N.A. (In re Diviney)*, 225 B.R. 762, 770-71 (10th Cir. BAP 1998). In these situations, had dismissal vacated the confirmation order, upon vacation of the dismissal, a debtor would have to file and confirm a new chapter 13 plan to effectively negate the primary benefit of reinstatement – avoiding a new confirmation

process. *See In re Murphy*, 493 B.R. at 582.

Therefore, despite the impact of dismissal on a chapter 13 plan, dismissal does not vacate a confirmation order. Dismissal of a chapter 13 case may result in part or all of a confirmation order being rendered of no further legal effect. However, in this case, because the Dismissal Language specifically provided for the post-dismissal time frame, the Confirmation Order remained enforceable and binding post-dismissal, and the Confirmation Order required the Trustee to distributed funds on hand as of the date of dismissal in accordance with the confirmed plan.

The Debtor argues that the Dismissal Language is ambiguous because it requires the Trustee to distribute funds post-petition "in accordance with the terms of the confirmed plan," but as set forth above, there is no confirmed plan post-dismissal. This argument misinterprets the language of the Confirmation Order. The Trustee is not ordered to disburse "pursuant to" or "under" the terms of the Debtor's prior confirmed plan, but "in accordance with" the prior confirmed chapter 13 plan. Thus, the Trustee is ordered in the Dismissal Language to distribute – as opposed to the pre-dismissal disbursements, which are made pursuant to a plan – in a manner consistent with the distributions that were made under the confirmed plan. The disbursement is made pursuant to the terms of the Dismissal Language, but the recipients and amounts are ordered to be consistent with how the disbursal would have been made under the pre-dismissal confirmed plan. Absent the language "in accordance with the plan," the Trustee would have had to file a motion or other document seeking approval of the amounts and recipients of the post-dismissal disbursement. Because the Trustee disbursed the funds on hand at dismissal to the Debtor's unsecured creditors consistent with the terms of the confirmed plan in this case, the Trustee was in compliance with the Confirmation Order and the disbursements made after dismissal entirely appropriate. The Debtor's motion for turnover of such funds must be denied.

## IV.  Conclusion

Therefore, for the reasons stated herein, the Court reverses its prior opinion in *Parrish* and finds that absent an order for cause under § 349(b)(3) or an order otherwise, in a case with a confirmed chapter 13 plan, the chapter 13 trustee must return any funds on hand held upon dismissal of the case to the debtor. In this case, the Confirmation Order was a valid, binding order even after dismissal, requiring the Trustee to disburse the funds on hand as of midnight of the date of dismissal to unsecured creditors. Thus, it is hereby ORDERED that the Debtor's Turnover Motion is DENIED.

[Signed and dated above.]

Service to: the Debtor; recipients of electronic notice.